Hassan Foreman v. AECOM We're ready when you are, Counselor. And you're reserved two minutes, is that correct? That's correct, Your Honor. May it please the Court. Over four years ago, this Court reversed the District Court's order dismissing this case because the District Court improperly considered and relied on extrinsic evidence. Determined to reinstate its prior ruling, the District Court improperly converted the previously denied motion to dismiss and granted it based on the same extrinsic evidence as before. But in doing so, the District Court ignored the overwhelming evidence in the record, establishing that there were disputed issues of material fact that precluded summary judgment, including evidence demonstrating disputes about the government's actual knowledge of AECOM's violations, the government's good reasons to continue payment, and the fog of the Afghanistan war, AECOM's knowledge that the government refuses to pay claims in similar circumstances, the government's enforcement actions in similar cases, and the seriousness and substantiality of AECOM's violations. Importantly, the government's actual knowledge and continued payment is not a dispositive factor in the materiality analysis. While the factor might be important, this Court said no one factor is dispositive in its prior opinion. The inquiry is holistic. It was improper for the District Court to elevate this one factor over all others and ignore the evidence submitted by Foreman regarding the other factors. I want to step back to the conversion question. When I read your briefs, I see what may be a compilation of three different things. One is the decision to convert the motion to dismiss to memorize the motion for summary judgment in the first place. The second is the opportunity to respond required under Rule 12d when such a conversion takes place. And the third is a separate ability to respond to a new argument and evidence submitted in a reply. Can you clarify what is your argument? There are three different arguments. The first is that the conversion order was impermissible per se. You didn't object to the conversion order. Well, the conversion order was entered in, entered sua sponte, so we didn't have an opportunity to notify the Court that we did not believe that the conversion would be inappropriate. But the District Court did not allow us. Do you believe you have done that simply by saying we object to what the Court has just done? Well, we asked the Court to give us a new opportunity to brief the issues after AECOM submitted its brief. The District Court denied that. You submitted a 60-page opposition in response to the Court's order with 75 exhibits, right? That's correct. Why isn't that a fair opportunity to respond and to address the issue? It was a fair opportunity to respond to the arguments made in AECOM's Rule 12b-6 motion. Let me ask you this, a more basic question. Was it wrong to convert the motion to a summary judgment motion? It was because there was no motion to convert after this Court's reversal of that motion in the prior appeal. The Court should have allowed full briefing by the parties, which was provided for in the schedule. I'm not sure I'm following that. District courts presented with motions to dismiss that have exhibits attached or other things that really are not appropriately considered on 12b-6 convert all the time. The obligation is to make sure the other side has an opportunity to respond to the materials now, not an opportunity to say, don't convert, or am I missing something? Well, in the context that you're discussing, there wasn't a prior decision by this Court that reversed the order of the District Court dismissing the case based on extrinsic evidence. And in this case, we had an opportunity to respond to that original motion. Well, the District Court understood from, we assume district judges follow our rulings, that it couldn't rule where it relied on extrinsic evidence. So now it comes back down and the judge says, okay, let's treat it as a summary judgment motion and gives you an opportunity to respond. Where is the error in the District Court doing that? Well, the error is that the District Court allowed AECOM to make new arguments that weren't in that original motion, submit new evidence that wasn't provided in that original motion and did not allow Foreman an opportunity to respond. Foreman jumped the gun, right? I mean, the order contemplated that AECOM would go first, then Foreman would have an opportunity to respond. But instead of waiting for AECOM to move, Foreman jumped ahead and submitted a 60-page response. Isn't that what happened? There's no indication in the Court's order of any new submission that would be filed by AECOM first, that AECOM would file a motion for summary judgment after that order. Does this boil down to the fact that you didn't get us to reply and you think you are entitled to one? For the conversion issue, Your Honor, I believe that's the case. Okay. So we review that for an abuse of discretion. Is that right? I agree with that. Okay. So why, given the length of your response, given the fact that you didn't object to the conversion order, given the fact that you rejected a more typical briefing schedule, why was there discretion abused? There was an abuse of discretion because we did not get an opportunity to respond to the new evidence and the new arguments made by AECOM. And that new evidence and those new arguments were relied upon by the District Court in granting summary judgment. So we effectively had no opportunity to present the evidence that we believe rebutted those facts. And there certainly was a lot of evidence in the record that warrants. So that's more of a due process type argument, though, right? Well, I think summary judgment in the prior Foreman case, in fact, says that the non-movement, needs the opportunity to rebut the relied upon evidence in the case. We didn't get that opportunity. The evidence in this case, though, that was submitted and ignored by the District Court, included evidence that there were good reasons for the government to continue payment. This Court recognized that there may be circumstances where that's the case. Here, the government had a very good reason to continue payment. This was a wartime contract. We submitted a special Inspector General for Afghanistan Reconstruction Report that said it was very difficult to change contractors in wartime and that the contingency environment in Afghanistan made it very difficult and precluded effective oversight of government contractors. There was an unpriced change order that said no other contractor can provide the same vital services as AECOM. Foreman's expert, Jason Boberg, reviewed this evidence and concluded or opined that the contingency environment in Afghanistan provided the government with a good reason to continue payment. But that wasn't all. There was also evidence that AECOM knew that the government refuses to pay claims in similar violations. AECOM made a liability determination for the timesheet error, for the timesheet violations. It concluded that it owed the government $144 million and even calculated a proposed settlement of 43. But AECOM buried that analysis. It drafted a letter to the DCAA, which it never sent. It created a slide presentation that You're over your time, so I just want to check in on my Okay. So we'll hear from you back on rebuttal. Thank you, Your Honor. May it please the Court, my name is Jenna Dabbs. I'm here on behalf of Defendant Appellee's AECOM and a variety of related entities, including AC First, which was the entity that provided support and maintenance services under the contracted issue in this case. I just want to touch briefly on the procedural questions that Relater raises, the procedural objections, and some of the questions that were just asked by the panel. It is absolutely the case that Relater had an opportunity to make all arguments in response to the summary judgment motion as converted by the district court. He had a full opportunity for briefing, and it followed after a two-year process of discovery. And that two-year process of discovery followed a three- to four-year investigative process aided by the government prior to the government deciding not to join this matter. Do you think that there were new evidence and new arguments in your last filing? Would we have been, or should the district court have allowed us to reply? I think that to the extent there was new evidence that Relater was not aware of and would not have anticipated, there might be some discussion about that. But importantly here, the arguments that we made in what we styled as our response to Mr. Foreman's opposition to summary judgment were arguments that we had made in connection with our motion to dismiss, and that were arguments we made throughout this litigation. So if we disagree and think that there was new evidence or new arguments, are you here today prepared to say that he should have been allowed us to reply, or is there another reason? If Mr. Foreman can demonstrate, and I don't think that he can here, and obviously I take issue with the factual premise, but I'll engage with it as requested. If Mr. Foreman can establish that those arguments or facts are difference-making to his ability adequately to oppose or effectively to oppose summary judgment, but he has to be able to articulate a basis. And in this case, the key issue all along has been that this is a false claims act case without any false claims. He's never articulated in years of litigation a cogent, cognizable theory of falsity that is recognized. And all of the claims that remain, the limited claims that remain in the case, and that were remanded after this Court's first consideration on the motion to dismiss and that decision, those limited claims, he has failed to satisfy any showing that they are material. The issues that he raises, he's failed to demonstrate any materiality to a government payment decision. So I think, Your Honor, the direct answer to the question is, if Relater can articulate a cognizable, specific hook that what he complains of would actually matter to the consideration of the summary judgment motion, that might... So what you just said was a little more robust or a little more muscular than what you started off with. I mean, it sounds to me like first you were conceding that there was something different or new, and now you're suggesting as if it were meritorious or asking us to look at the merits. Did I misunderstand you? I feel like my instinct should be to go with something described as more robust, but perhaps I can start in a different... Okay, so you're actually asking us to determine that the information would have been outcome determined, I know? I mean, what do you... No, I think that what is required is that the parties have a reasonable opportunity to present all of the material that is pertinent to the motion. So to the extent there is a fair argument that here or in any other case, Relater was surprised by an argument made. Again, I don't think that there is any basis for that conclusion on this record. And the specific exhibits, incidentally, that the district court relied on in our submission were entirely the contract itself and operative documents associated with the contract. So I don't think there's any colorable argument here that that's an issue. But I do think that that is the question, whether parties have a reasonable opportunity to present the pertinent material. So in this case, the discovery process and the way that the arguments were teed up in our view gave Relater more than adequate opportunity to meet those arguments and that evidence. I would allow for the possibility that there could be a scenario where there would be some brand new piece of information and a response to that would have to be permitted in order to satisfy that touchstone, which is an opportunity to present all material that's relevant. I guess I would just add... So in this case, if we determined that it was wrong for the district court to reject a request for an additional brief, what would you think is the appropriate thing there? Would we still reach the merits, or would we look at the merits, or would we send it back for that? What would we do? I think you would look... In this specific case, because the merits are clear and Relater has not articulated a specific thing he needs to respond to that is new or different, the court should reach the merits and conclusively determine that the district court's decision on summary judgment was the proper one here based on the merits. I would just add, this is a problem to the extent it's a problem, and again, we don't credit that it is in this case, but this is a problem of Relater's own making. We had proposed an orderly briefing schedule. The district court contemplated that in the overall schedule that applied to the case. He even commented at the court conference following the conversion that we appeared not to be following that order. So he should not now be permitted to make the... The briefing schedule? The proposed briefing, where is that? Well, we had, we touched on it at the court's... At the conference. Conference, that we were discussing that, but by that... The suggestion was that ACOM would go first. We made that suggestion to Relater, and Relater ignored it, and then filed the lengthy brief that the court referred to earlier. But ordinarily, you would make the motion, they would oppose, you would have the right to reply, and ordinarily, there wouldn't be a certifying. That's right. And I think the question ultimately for this Court then is, we're not suggesting that the way that this proceeded from a procedural perspective was typical. That said, it certainly wasn't abuse of the district court's discretion. It was an approach that was embraced by the Relater. And the question at the end of the day is whether both parties had an opportunity to present all of the material pertinent to the motion. And there's just not a colorable argument here that Relater was surprised by an argument, for example... That's only one of the bayway factors, though, right? I mean, there's the lack of surprise, which, you know, there was the whether the nominee had actually moved to file this or reply, which he did, and then whether he made a claim that he had evidence to counter new evidence, and he does. So how does your one lack of surprise overcome the two other factors that our precedent suggests we need to consider when deciding whether or not there was discretion to be used in not allowing a certify? I don't think that he has made a credible argument that he required an additional opportunity to reply. He also incidentally took that opportunity in the form of his Rule 56D motion, which itself was a 45-page brief with an attorney declaration that attached 1,400 pages of exhibits and listed 10 broad categories of information that he claimed, despite having already opposed summary judgment, that he claimed he required in order to oppose summary judgment. So I don't think that there is a colorable argument that there were specific pieces of argument. If you look at the record, none of those arguments were new. They were, without question, all of the arguments on both sides were more fully developed after two years of discovery, but they were not new arguments. Before your time runs out, may I ask you to respond to counsel's argument that, with respect to the government continuing to contract with the parties here, that the district court couldn't grant summary judgment because there were a number of reasons why the government would not have terminated the contract under the totality of circumstances, given even though it knew there were problems. How do you respond to that, that summary judgment should not have been granted in those circumstances? I think that the most important response to that, and there can be a series of them, but I think that the most important response to that is the argument is essentially that this is a wartime contract, and it's not easy. I mean, there are arguments in this case by Raelator about certifications and vetting of personnel. All of these people are working on military bases and in active wars. Without question, there are going to be complexities to getting contractors in place and replacing those contractors, but here what you can look to to know that it is not the case that the fog of war would have impacted or was the basis to conclude that these were not, that these were material or that one cannot conclude that they were immaterial at this stage is because the contract, after the war was over, after the contract had been performed, went through a multiyear closeout process where costs were fully audited, and the government was well aware of the alleged labor billing issues. They were well aware of issues that were raised with certifications and qualifications of personnel, and they challenged none of the labor billing costs at that stage. It's not a major action that defeats the materiality claim. Is that what you're saying? I think it's a persuasive piece of it, Your Honor, because it is firmly after any fog of war has lifted, and the government is aware of, clearly, with respect to both aspects of the labor billing claims that survived the remand of the case and the motion to dismiss proceedings, the timesheet errors and relators' claim about the qualifications of workers who had access to a particular government system. The contract was extended eight times. The government continued to pay, and definitively, regardless of what relator's expert says, which incidentally was not based on any particular expertise and relied on some documents that had nothing to do with this particular contract, but accepting the broader point, all you have to look to is something that postdates the war itself to see that none of these purported violations or issues were material to any payment decision by the government, which challenged none of the labor billing costs at the end of the day. Thank you. Thank you. I'd like to start with the conversion order. My friend challenged us to identify any new arguments or new evidence in their response that we didn't already know about. Well, I can identify two arguments that were never made in the original Rule 12b-6 motion, that the government had any knowledge of unqualified, unvetted, and uncertified SAMS employees. There was no argument made regarding that issue in the original 12b-6 motion. There was also no argument. Is it arguments that you have to have an opportunity to respond to? I mean, I'm not sure. I thought you had suggested that there were facts put forward that you had not been aware of. Did I misunderstand you? You did not. There's both new arguments and new facts. The new facts would be that they pointed to particular documents and new exhibits that were submitted in that response that allegedly showed that the government had knowledge of SAMS employees that were unvetted and uncertified. We obviously disagree that it shows that. But that evidence was submitted with this summary judgment brief, but never submitted with the Rule 12b-6 motion. There's exhibits 2 through 12, 12 and 14 to that brief, to the summary judgment brief. If you were given a chance to submit a CERB line now, is there something new that you would offer in that CERB line? Absolutely. That the court hasn't already considered? Yeah. The district court did not consider any of our expert testimony and arguments made regarding those new documents. You didn't have an opportunity to present that? We did not. You said there were two. One was the government not having knowledge, and then you said that there were... There was a new argument and new evidence submitted in support of it that the contract did not require any vetting or certification for SAMS employees. So those were the new arguments, and there were accompanying exhibits supporting those arguments with the summary judgment brief. If you look back at the Rule 12b-6 motion, none of that is in there. Now, my friend referenced the district court's scheduling order. The scheduling order at the beginning of the case just contemplated that the parties would request summary judgment briefing. There was no special order beyond the conversion order that discussed briefing related to summary judgment. As a matter of general practice, when you have a motion, usually the moving party goes first, lays out its argument. The party opposing the motion would then go next, and then the moving party would have an opportunity to submit a reply. But here you didn't wait for the first step. You just went ahead and jumped to the second step. So didn't you create the problem by not waiting to see what ACOM was going to argue? The motion was filed at the beginning of the case. It was the Rule 12b-6 motion, and it was converted. Correct, but then the court said, we're going to do this as a summary judgment. He did not invite a further memorandum of law in support of that Rule 12b-6 motion. He just converted it. By the local rules, we felt obligated to respond within the 14-day time period. My friend also said that we don't have a cognizable theory of falsity. Well, that's not something the district court ever ruled on, but we do. There were factually false claims submitted by AECOM. They overbilled the government for labor costs for work that was never performed by their employees. They also submitted false certifications with their vouchers. Along the way, the government extends the contract eight times, continues to pay. There were, I don't know, a dozen audits. There were regular audits. There's a CID raid. There are reports. On that record, how could a fact finder conclude that the violations, assuming they existed, were material? They knew about it, but yet continued to extend the contract and continued to pay. Well, first off, this was, as I noted previously, a wartime contract. And the fact that it was a wartime contract didn't give AECOM a buy somehow on the requirements. In fact, the whole contract, when it was negotiated, was negotiated as a wartime contract, where it would be assumed that there would be these issues for AECOM. But the later actions, after the war was over, those actions were only — that was after Foreman blew the whistle on AECOM. That shouldn't be something that this Court considers relevant to materiality. That's akin to considering the government's declination in this case. What matters is that there's evidence that the government cares about these issues. There was an audit report that we submitted to the district court involving a subcontractor. You're over time, so why don't you finish your sentence? I'll wrap — just please let me wrap up this one point. The Anham subcontractor, there was a DCA audit of that subcontractor, and it disallowed costs based on the fact that that contractor submitted timesheets that weren't signed by employees and not approved by contractors and included excess hours. That's not a post hoc, you know, FCA case. That happened during the lifetime of the contract. If the Court has no further questions, thank you. Thank you. So that concludes all of our argument calendars.